UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOUGLAS ALEXI MARADIAGA,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03283-JNW<br>[related to 2:26-cv-01449-JNW]<br><br>ORDER GRANTING HABEAS PETITION |

Douglas Alexi Maradiaga's immigration habeas petition comes before the Court. Dkt. No. 1. The Court GRANTS the petition and ORDERS Maradiaga's release for the reasons below.

## 1. BACKGROUND

Maradiaga is a citizen of Honduras who has lived in the United States for at least 13 years. Border Patrol agents detained near the Arizona border in July 2013 and placed him in expedited removal proceedings. Dkt. No. 12 ¶ 5. He claimed a fear of returning to Honduras and passed a credible fear interview. Dkt. No. 12 ¶¶ 5, 9. The Government served him with a notice to appear for immigration proceedings, but it failed to set a hearing date for him before 2025. *See id.* ¶ 10.

Immigration and Customs Enforcement ("ICE") then released Maradiaga on an Order of Release on Recognizance ("OREC"). *Id.* ¶ 11.

Maradiaga owns a home in Florida, where he lives with his U.S. citizen wife and three U.S. citizen children. On April 16, 2025, he reported to a scheduled ICE check-in and was detained without notice or an opportunity to be heard. The record does not say why ICE revoked his OREC; it says only that he would "be held in ICE custody pending removal proceedings." Dkt. No. 2-1 at 6. The same day, ICE served Maradiaga with a new notice to appear and began removal proceedings. Dkt. No. 12 ¶ 13. On April 29, Maradiaga appeared before an Immigration Judge ("IJ") in the Florida, who deferred a bond decision so that his attorney could brief the issue. Dkt. No. 12 ¶ 14. Two days later, on May 1, the Government transferred Maradiaga across the country, away from his attorney and family, to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained. *Id.* ¶ 15. The Tacoma Immigration Court denied bond, finding it lacked jurisdiction to release Maradiaga because he was mandatorily detained under 8 U.S.C. § 1225(b). *Id.* ¶ 16. An IJ later denied Maradiaga's asylum application and ordered him removed to Honduras. *Id.* ¶ 19. On September 23, 2025, Maradiaga appealed that decision to the Board of Immigration Appeals ("BIA"), and that appeal remains pending. *Id.* ¶ 20. He then requested another bond hearing. *Id.* ¶ 21. The IJ again denied bond, finding it lacked jurisdiction because of Maradiaga's mandatory detention. *Id.* ¶ 23.

Maradiaga petitioned for a writ of habeas corpus in this Court, arguing that he was subject to discretionary detention, not mandatory detention. *Maradiaga v.*

*Mullin et al.*, No. 2:26-cv-01449-JNW ("*Maradiaga I*"), Dkt. No. 8. The Court agreed with Maradiaga and ordered the Government to provide him with a bond hearing under 8 U.S.C. § 1226(a). *See Maradiaga I*, No. 2:26-cv-01449-JNW, 2026 WL 1706874 (W.D. Wash. June 12, 2026). Maradiaga did not argue in that case that he was entitled to release because the revocation of his OREC violated due process, and so the Court did not address that issue. *See id.*

On June 24, 2026, Maradiaga received a bond hearing under Section 1226(a)—his third bond hearing, and the first at which an IJ reached the merits. The IJ denied bond, finding Maradiaga was a "very poor bail risk" and a danger to the community. Dkt. No. 11-3 at 6. The IJ held that Maradiaga had "failed to meet his burden of showing that he was not a danger to the community or flight risk." *Id.* at 3. Maradiaga appealed the decision to the BIA and filed this habeas petition. While the petition asserts that Maradiaga's OREC was revoked without notice or an opportunity to be heard, the petition does not request release on that basis.[1]

## 2. DISCUSSION

### 2.1 Legal standard.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful

[1] The Court ordered supplemental briefing on the issue, in which the Government conceded that it re-detained Maradiaga without notice or a hearing. The Government argued, however, that because the habeas petition did not seek release on that issue, the Court should not address it. As the Court finds release appropriate on a separate basis, the Court does not address the issue.

opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**2.2 Prudential exhaustion is not required.**

The Government argues that the Court should require Maradiaga to exhaust his administrative remedies before seeking relief from this Court. Dkt. No. 10 at 3–6 (citing 8 C.F.R. § 1003.19(e)). Exhaustion here is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even assuming the *Puga* factors favor exhaustion, a court may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (citation modified). Maradiaga has been detained for over a year; requiring him to wait out a BIA appeal would inflict the harm the process he seeks

is meant to prevent. *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1101–02 (W.D. Wash. 2026). The Court will waive exhaustion and consider the merits.

**2.3 The IJ abused his discretion in denying bond.**

While district courts generally lack jurisdiction to review bond decisions issued by IJs, they do have "habeas jurisdiction over constitutional claims or questions of law" that arise in the context of bond denials. *Hernandez*, 872 F.3d at 987. When an IJ denies bond based on a finding of flight risk or dangerousness, the district court reviews the IJ's findings for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 784–85 (9th Cir. 2024). Under this standard, the Court may not reweigh the evidence, but it may consider whether the IJ correctly applied the appropriate legal standard to a given set of facts. *Id.* at 782, 785; *see also Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *7 (N.D. Cal. May 19, 2020) (collecting cases discussing legal error in immigration habeas cases). The Government says Maradiaga's petition is "a mere disagreement with the IJ's bond determination." Dkt. No. 10 at 2. It is not. The question is not whether this Court would have weighed the evidence differently, but "whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish" flight risk or danger. *W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (citation modified). And "[t]here cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." *K.G.M.Q. v. Bondi*, No. 2:26-cv-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026). Thus, the IJ's "failure to provide a reasoned explanation is an abuse

of discretion." *Hernandez v. Scott*, No. 2:26-cv-02549-KKE, 2026 WL 2814250, at *2 (W.D. Wash. Sept. 20, 2026) (citing *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014)); *see also Vasquez Lopez*, 830 F. Supp. 3d at 1103 ("The Court is left to speculate concerning how the [IJ] viewed the evidence in light of the applicable factors. The Court must conclude that the [IJ] failed to do so, which constitutes an abuse of discretion.").

To decide if a noncitizen is a danger to the community or flight risk, the IJ weighs nine, non-dispositive "*Guerra*" factors. *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Martinez*, 124 F.4th at 783)). The *Guerra* factors are:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783. The Ninth Circuit has reiterated that an IJ has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id.* at 783–84.

**2.3.1 The IJ's dangerousness finding was an abuse of discretion.**

The IJ erred in finding that Maradiaga "has a history of criminal encounters involving alcohol and driving" that make him a danger to the community. Dkt. No. 11-3 at 6. In February 2020, Maradiaga was convicted of misdemeanor driving under the influence and pleaded no contest to driving without a license, with adjudication withheld on the second count. Dkt. No. 2-1 at 26–29. As a result of the DUI, Maradiaga was placed on probation for one year. Dkt. No. 2-1 at 29. He satisfied the conditions of the judgment against him, including 50 hours of community service, and the judge terminated his probation early. *See id*. at 29–31. The record does not show that Maradiaga has driven under the influence since, or that he has any other criminal history.

The IJ supported his finding by pointing to a 2021 car accident for which Maradiaga was cited. The Government is right that an IJ may consider conduct that did not produce a conviction. *See Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *9 (N.D. Cal. May 19, 2020) (quoting *Guerra*, 24 I. & N. Dec. at 40). But the IJ must describe that conduct accurately. The IJ states that "the charges stemming from the accident in 2021 were ultimately dismissed," but there is no evidence suggesting charges were ever filed. *See, e.g.,* Dkt. Nos. 11-2 at 2 (I-213 does not reference 2021 accident as criminal history or otherwise). Indeed, while an officer found that Maradiaga caused the accident, he only cited Maradiaga for civil traffic infractions not requiring a court appearance. Dkt. No. 2-1 at 35. The trooper recorded Maradiaga's condition as "Apparently Normal," marked "Suspected Alcohol Use: No," and gave no alcohol test. *Id*. at 35. An open bottle of alcohol was

found in the front seat after the collision, but an open bottle within reach is a traffic infraction, not evidence that Maradiaga was drinking and driving.

Even taking the 2021 accident into account, the IJ's analysis skipped a required step. "[T]he recency and severity of the offenses must be considered," and "[e]vidence of criminal conduct grows less powerful as it becomes less current." *Garcia Miranda*, No. 2:26-cv-00906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026) (citation modified). At the June 24, 2026, hearing, the accident was more than five years old and the DUI nearly seven. The IJ's dangerousness analysis weighs nothing on the other side, such as the completed alcohol evaluation or the five years without incident, and ends with the observation that "[a]lcohol and driving do not mix." Dkt. No. 11-3 at 6. That is true, but it is not an individualized finding about Maradiaga.

Based on the record before the IJ, Maradiaga does not pose a danger to the community as a matter of law.

#### 2.3.2 The IJ's flight-risk finding was an abuse of discretion.

The IJ also erred in concluding Maradiaga is a flight risk on this record, which does not support a flight-risk finding as a matter of law. The IJ found that Maradiaga proved he "has significant ties to the United States" and concluded: "[h]e has been residing in the United States for over 13 years, he is married to a United States citizen, he has 3 United States citizen children, he has a work history, a fixed address, owns a home, and has community support." 11-3 at 5. The IJ also "recognize[d] that [Maradiaga] was apprehended when he reported as required by

immigration officers . . . in April of 2025," demonstrating his willingness to appear. *Id*. at 6. Nevertheless, the IJ concluded that Maradiaga was a "very poor bail risk," because: (1) he "has used a false identity [to] work in the United States"; (2) he has a "spotty record of filing income taxes"; (3) his immigration case is on appeal before the BIA; and (4) "an immigration judge recently found that Respondent did not testify credibly in his immigration case." Dkt. No. 11-3 at 5–6. The IJ failed to rationally explain how these findings make Maradiaga "a very poor bail risk," especially considering the *Guerra* factors that weigh in Maradiaga's favor. *Id*. at 6.

The Court begins with the IJ's conclusion that use of a false identity for employment purposes favors a flight-risk finding. The record shows that Maradiaga bought a false Social Security card and a false permanent resident card and used them to get work. Dkt. No. 2-1 at 12. The IJ's reasoning is arbitrary and an abuse of discretion, in part, because it is "in tension with BIA caselaw" regarding employment. *Rodriguez-Pineda v. Hernandez*, No. C26-2367-MLP, 2026 WL 2321531, at *5 (W.D. Wash. Aug. 11, 2026) (collecting cases). Under BIA precedent, a lack of employment history "militates against release on bond because it would indicate the noncitizen is less likely to appear for removal proceedings." *Id*. (citation modified). So when a noncitizen uses false documents solely to maintain employment, it is illogical to find that conduct probative of flight risk without some further explanation, and the IJ offered none. The Government's return does not attempt to support the IJ's finding on this point.

Second, with no analysis or explanation, the IJ found that Maradiaga's "spotty record of filing income taxes" makes him a flight risk. Other IJs recently

have found that even the irregular filing of income taxes mitigates *against* finding flight risk. *See Padilla Paz v. Hernandez*, 833 F.Supp.3d 1180, 1190 (W.D. Wash. 2026). And notably, the Tacoma Immigration Court has acknowledged that Maradiaga's family has hired a tax professional to correct their taxes. Dkt. No. 2-1 at 14 n.7. Accordingly, the conclusion that Maradiaga's filing of income taxes makes him a flight risk is arbitrary and unsupported.

Turning to the IJ's assessment of Maradiaga's immigration case. "[A]n IJ 'may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond' based on the rationale that a noncitizen who likely faces inevitable removal may be less likely to appear at future removal hearings." *Padillo Paz v. Hernandez*, 2026 WL 1257333, at *7 (W.D. Wash. Apr. 29, 2026) (quoting *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020)). But "the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk," and an IJ who draws that inference must "make that connection to Petitioner's individual circumstances[.]" *Rodriguez-Pineda v. Hernandez*, No. C26-2367-MLP, 2026 WL 2321531, at *5–6 (W.D. Wash. Aug. 11, 2026). Here, the IJ states that Maradiaga's application for relief from removal was denied, and his appeal is unlikely to succeed. While that factor could favor a flight-risk finding, the IJ does not explain why this factor outweighs the *Guerra* factors that support release. *See Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *5 (W.D. Wash. Apr. 10, 2026) (finding abuse of discretion when "the IJ did not explain how the relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances presented in this case"). Nothing in his

memorandum explains why this petitioner—who owns his home outright and whose wife and three children are United States citizens living in it—would abandon them to avoid a removal order that is still on appeal.

Finally, the IJ fails to explain how a previous adverse credibility finding against Maradiaga in his immigration case makes him more likely to flee, abandoning his family, community, job, and real property.

Accordingly, based on the record presented to the IJ, Maradiaga is not a flight risk as a matter of law.

**2.4 Remedy.**

As for the appropriate remedy, federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). For the reasons above, the Court finds no basis for Maradiaga's continued detention. Thus, it will grant his release. This decision is consistent with those of other courts in this district, presented with similar habeas petitions. *See, e.g., Soriano*, 830 F.Supp.3d at 1081– 82 (ordering release after IJ abused discretion in finding petitioner was a flight risk); *Vasquez Lopez*, 830 F. Supp. 3d at 1103 (ordering release after IJ abused discretion in finding petitioner was a flight risk and danger to the community); *Hernandez*, 2026 WL 2814250, at *3 (same); *Ascencio-Zetino*, 2026 WL 2686835, at *5 (same); *Vasquez v. Scott*, No. 2:26-cv-02515-DGE, 2026 WL 2285535, at *5 (W.D. Wash. Aug. 7, 2026) ("If the IJs continue to issue bond denial orders without any explanation in writing or on the record, the IJs and Respondents can expect the Court will continue to grant habeas

relief.")); *see also Miri v. Bondi*, Case No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *12 (C.D. Cal. Mar. 5, 2026) (California district court ordered habeas petitioner's immediate release after finding IJ abused discretion in denying bond).

Maradiaga also asks the Court to bar electronic monitoring as a condition of release, to order the IJ to read this decision and affirm in writing that he has done so, and to award fees under the Equal Access to Justice Act. Dkt. No. 1 at 22. The first two requests are unsupported by factual development or legal argument and are DENIED. But Maradiaga may file a fee petition as the Act provides.

## 3. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Government must release Petitioner from custody within TWENTY-FOUR (24) HOURS of this order under his previous conditions of release and must return any and all identification documents and personal belongings taken from Petitioner at the time of apprehension or during detention. Respondents must file a status report within FORTY-EIGHT (48) HOURS of this order confirming their compliance.

Dated this 19th day of October, 2026.

Jamal N. Whitehead
United States District Judge